Argued and submitted February 9, reversed and remanded April 13, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROZALIND SUE OLLER,
*Defendant-Appellant.*

Douglas County Circuit Court
13CR0619FE; A156526

371 P3d 1268

Ingrid A. MacFarlane, Deputy Public Defender, Office of Public Defense Services, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

DEHOOG, J.

## DEHOOG, J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine. She assigns error to the trial court's denial of her motion to suppress physical evidence and incriminating statements. An officer conducted a traffic stop of defendant and her passenger, who the officer knew to be on probation for drug-related conduct. After concluding the traffic stop, the officer observed syringes in the pocket of the driver's side car door. Based on that observation, the officer asked defendant if she had anything illegal in the car and requested consent to search her purse. Defendant consented to the search of her purse, as well as to the search of a closed red bag inside the purse. The search of the red bag yielded physical evidence of drug possession and statements by defendant, which defendant sought to suppress. We conclude that (1) the officer did not have reasonable suspicion to investigate defendant for a drug crime when he began to question her about illegal items in her car and, therefore, the officer unlawfully detained her and (2) the state did not meet its burden of proving that the police did not exploit that unlawful seizure to obtain defendant's subsequent consent. Accordingly, we reverse and remand.

We review the denial of a motion to suppress to determine whether the trial court's factual findings are supported by constitutionally sufficient evidence in the record and whether the trial court correctly applied applicable principles of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We take the facts from the court's findings and from consistent evidence presented at the suppression hearing. We are bound by the trial court's findings of historical fact if there is evidence in the record to support them. *Id.* If the trial court did not make detailed findings on disputed issues of fact, we infer that the court made findings consistent with its ultimate conclusion, so long as the record supports that view of the facts. *State v. Watson*, 353 Or 768, 769, 305 P3d 94 (2013). With that standard in mind, we present the following facts, based primarily on the officer's largely uncontroverted testimony at the suppression hearing.

Defendant was driving with a passenger when Douglas County Deputy Sheriff Riesen stopped the car she

was driving during a routine patrol. Riesen had recognized defendant's passenger as a known drug user and had followed defendant's car. When Riesen saw defendant make an illegal lane change, he stopped her to investigate that traffic violation. After explaining the reason for the stop, Riesen asked defendant for her driver's license. Defendant could not provide her driver's license.

To determine defendant's identity, Riesen asked her to step out of her car and accompany him to his patrol car. Riesen detained defendant outside of his patrol car while he checked her identity through his computer. During that time, Riesen also confirmed with dispatch that defendant's passenger was on probation for drug crimes. After confirming defendant's identity and confirming that she was a licensed driver, Riesen told her that he would only issue her a warning for the lane change violation. Riesen then walked with defendant back to her car.

On the walk back to defendant's car, Riesen asked defendant whether she knew that her passenger was on probation and that he was not allowed to associate with drug users. Riesen characterized that discussion as "conversation" and said that he often talks with people and walks them back to their cars after he has finished a traffic stop.

When defendant opened the driver's side car door to drive away, Riesen saw syringes in the pocket of that door. In Riesen's experience, the syringes he saw were of a type that intravenous drug users typically use. At that point, Riesen believed that he had grounds to investigate defendant for a drug offense. Riesen asked defendant about the syringes and asked her whether she had anything illegal in the car. She said that she did not and agreed to let Riesen search her purse, which was located between the driver's and passenger's seats.

Defendant and Riesen walked to the back of defendant's car, and defendant began to remove items from her purse. Defendant identified each individual item for Riesen as she removed it from her purse. Based on his experience, Riesen believed that that behavior indicated that defendant was hiding something. Because Riesen thought that defendant "seemed to be taking forever," he asked defendant,

"Why don't you just let me look in the purse?" Defendant agreed and handed Riesen her purse.

While searching defendant's purse, Riesen removed a red bag from inside the purse. He asked defendant what was inside the bag. In Riesen's words, she "paused an unusual length of time," "stared * * * blankly" at Riesen, and "panicked." Defendant reached out to grab the red bag from Riesen, but he "pulled it away from her." Riesen understood that defendant "didn't want [him] to look in the bag," and thought that her act of grabbing for the bag "was a nervous reaction." Riesen again asked defendant what was in the red bag, and defendant responded that there were "meth items" in the bag. Riesen asked defendant if he could search the bag, and defendant "told [Riesen he] could look in it." Inside the bag, Riesen discovered drug paraphernalia and a residual amount of methamphetamine. Defendant made additional incriminating statements after that discovery. Riesen arrested defendant for methamphetamine possession, and this charge followed.

Before trial, defendant moved to suppress her statements and the physical evidence obtained during her encounter with Riesen. She argued that the evidence should be excluded because Riesen twice violated her right against unlawful searches or seizures under Article I, section 9, of the Oregon Constitution.[1] First, defendant argued that Riesen had unconstitutionally seized her by unlawfully detaining her after the traffic stop had ended. Second, she argued that she had not consented to the search of her purse and the red bag within it. The state responded that defendant had not been unconstitutionally seized and that defendant had provided valid consent to search. According to the state, the initial traffic stop had ended when Riesen told defendant he would only issue her a warning and walked with her back to her car. Although the state conceded that Riesen had again seized defendant when he began to question her about illegal items in her car, the state argued that, by that time, the syringes visible in the car door had given Riesen reasonable suspicion to investigate defendant for a drug crime.

---

[1] Article I, section 9, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

The trial court denied defendant's suppression motion, based on its conclusions that neither the seizure of defendant nor the search of her purse had been unlawful. The court agreed with the state that the original traffic stop had ended when Riesen told defendant that he would issue her a warning for the traffic violation. The court further agreed that Riesen subsequently effected a new stop, but that, based upon the syringes that Riesen had seen in the car door, it had been a lawful stop supported by reasonable suspicion to investigate defendant for drug crimes. The court also concluded that defendant voluntarily consented to the searches of her purse and the red bag.

On appeal, defendant renews her argument that Riesen unlawfully seized her—either by extending the traffic stop when he walked with her to her car after signaling that she was free to leave, or, alternatively, by detaining her anew when he questioned her at the car about drug activity. According to defendant, Riesen did not have reasonable suspicion to justify either a continuation of the traffic stop or a new investigatory detention. As it argued in the trial court, the state responds that Riesen did not unlawfully seize defendant when he walked with her back to the car, and reasonable suspicion justified any detention that may have occurred at the car.[2]

On this record, defendant's first argument—that Riesen unlawfully seized her—is dispositive; it is therefore unnecessary to reach her second argument regarding the search of her purse. As the state acknowledged before the trial court, Riesen detained defendant after he had completed his traffic investigation when he asked her whether there was anything illegal in the car and asked to search her purse. Therefore, we assume, without deciding, that defendant was seized at that point, and we conclude that

---

[2] The state also suggests, as an alternative basis for affirmance, that Riesen did not seize defendant after returning to her car. However, the state acknowledged in its argument to the trial court that defendant was seized at that point. We decline to consider the state's alternative argument—that there was no seizure—for the first time on appeal. *State v. Meza-Garcia*, 256 Or App 798, 802, 303 P3d 975 (2013) (citing *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001)) (declining to consider the state's alternative basis for affirmance—that the defendant was not seized—when the state had conceded to the trial court that the defendant *was* seized).

Riesen did not have reasonable suspicion to detain defendant to investigate her for a drug offense at that time. Thus, Riesen's detention of defendant was unlawful. Moreover, the state has not satisfied its burden of proving that defendant's consent to the search of her purse and the red bag was not the product of that unlawful seizure. Therefore, the evidence discovered inside the red bag—as well as defendant's incriminating statements made then and afterwards— should have been suppressed. Accordingly, the trial court erred in denying defendant's motion to suppress.

Because Riesen seized defendant to investigate potential drug crimes after the traffic stop had ended, that renewed seizure was lawful only if the circumstances supported reasonable suspicion that defendant was engaged in criminal activity. *See State v. Rodgers/Kirkeby*, 347 Or 610, 627, 227 P3d 695 (2010) (when stop occurs after completed traffic investigation, officer must have reasonable suspicion to justify continued detention). Thus, this case requires us to consider what constitutes reasonable suspicion of criminal activity and whether the circumstances as Riesen found them supported the reasonable suspicion that defendant was involved in illegal drug-related conduct.

Reasonable suspicion sufficient to support an investigatory detention exists when an officer subjectively believes that a person has committed or is about to commit a crime and that belief is objectively reasonable in light of the totality of the circumstances existing at the time of the stop. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997); *State v. Maciel*, 254 Or App 530, 535, 295 P3d 145 (2013); *see* ORS 131.605(6) (defining "[r]easonably suspects"). To be objectively reasonable, the officer's suspicion must be based on specific and articulable facts. *Ehly*, 317 Or at 80. In forming reasonable suspicion, an officer may draw reasonable inferences from the circumstances. *State v. Hudson*, 253 Or App 327, 340, 290 P3d 868 (2012), *rev den*, 353 Or 562 (2013). While an officer's training and experience inform which factual inferences an officer may reasonably draw, training and experience alone are not an adequate substitute for objectively observable facts. *State v. Holdorf*, 355 Or 812, 829, 333 P3d 1982 (2014); *State v. Walker*, 277 Or App 397, 401-02, 372 P3d 540 (2016).

Where, as here, reasonable suspicion is based upon a chain of interlocking inferences, we assess whether those inferences are individually and collectively reasonable. *State v. Kolb*, 251 Or App 303, 313, 283 P3d 423 (2012). "If the premises collectively are impermissibly speculative, or if any of the premises is individually insupportable, the stop was not supported by reasonable suspicion." *Id.* (citing *State v. Bivins*, 191 Or App 460, 466-71, 83 P3d 379 (2004)). That is because, in those circumstances, the inferential chain becomes "too tenuous" to support a nonspeculative suspicion of criminal conduct. *Id.* Stated differently, the link between the observable facts and the officer's ultimate conclusion becomes a "bridge too far," even after all *reasonable* inferences are considered. *Id.*

We explained that principle in *Kolb*. There, we held that an officer's observation that the defendant was under the influence of a central nervous system stimulant did not support reasonable suspicion that she possessed methamphetamine at the time. *Id.* at 312-15. In that case, the investigating officer, who was a certified drug evaluator, encountered the defendant during a traffic stop. *Id.* at 305. He noticed that the defendant exhibited various signs of recent drug use: she was "extremely fidgety," her movements were "very fast and random," her pupils were "larger than normal," and she was "very talkative." *Id.* Based on those observations, as well as his training and experience, the officer found it obvious that the defendant was "under the influence of a [central nervous system] stimulant." *Id.* The trial court reasoned that that fact, again viewed through the lens of the officer's training and experience supported the officer's belief that the defendant possessed methamphetamine paraphernalia, which, in turn, would contain methamphetamine residue. *Id.* at 307. Thus, the court concluded that there had been reasonable suspicion to detain the defendant to investigate her for the possession of illegal drugs. *Id.* at 315.

On appeal, we concluded that the link between the officer's initial observation—that the defendant was under the influence of a stimulant—and his apparent conclusion—that the defendant possessed paraphernalia with

methamphetamine residue—was too tenuous to support reasonable suspicion; it was "a bridge never built." *Id.* at 314. As we explained, the trial court's conclusion had rested on "five interlocking premises." *Id.* at 312. In light of the officer's observations and training and experience, we accepted the first premise, which was that the defendant was under the influence of a stimulant. *Id.* at 313. We found the second premise, that persons who are under the influence of drugs often possess related drug implements, to be more attenuated and to partake of "unamplified 'training and experience.'" *Id.* The third premise, that persons who possess drug implements will retain them, was "innately inferential" and so was even more concerning. *Id.* at 314. But it was the last two premises—that the hypothetical drug implements would bear evidence of prior use and that that evidence might include detectable quantities of methamphetamine—that rendered the analysis so attenuated as to be impermissibly speculative. *Id.* at 314-15. In other words, even if we could disregard the fact that some of the officer's individual premises were arguably speculative, the collective whole required an impermissible stacking of inferences that could not support reasonable suspicion. *Id.* at 315.

Here, it is undisputed that Riesen subjectively believed that defendant possessed illegal drugs when he saw the syringes in her car door. However, as in *Kolb*, only an impermissible stacking of inferences connected Riesen's observations with the ultimate inference that she presently possessed drugs. As a result, Riesen's subjective belief was not objectively reasonable. In forming that belief, Riesen would necessarily have relied upon the following chain of interlocking inferences: (1) because defendant had been driving the car, the syringes in the driver's side door were likely hers; (2) because defendant apparently possessed syringes that were of a type that Riesen knew to be used by intravenous (IV) drug users and defendant was in the presence of a known drug user, defendant was likely to be an IV drug user herself; and (3) because IV drug users who carry drug paraphernalia may also possess illegal drugs— which, without more, is itself arguably speculative[3]—

---

[3] *See Kolb*, 251 Or App at 314 (concluding that it was impermissibly speculative to infer that, if a suspect who is under the influence of a controlled substance

defendant herself might possess illegal drugs.[4] It may well have been reasonable for Riesen to make the first inference, that because defendant had been driving the car, the syringes in the driver's side door belonged to her. However, the connection between that first reasonable inference and Riesen's resultant belief that defendant might possess illegal drugs was impermissibly tenuous.

The chain of inferences begins to weaken immediately after the first inference. The second inference—that defendant was herself an IV drug user—has limited support. The only support for that inference is that she apparently possessed syringes of a type used by drug users and that her *passenger* was a former drug user. Riesen did not describe any behavior or characteristic of defendant personally that he associated with illegal drug use. He also did not testify that the syringes she possessed were *unique* to IV drug users. Furthermore, Riesen gave no description of the syringes themselves that would aid the court in evaluating whether defendant's possession of them indicated that she was an active drug user. For example, he did not explain whether they appeared new or used, packaged or loosely strewn, clean or contaminated. Thus, Riesen's observation of the syringes alone could not support the inference that defendant used them to inject illegal drugs. *Cf. State v. Chambers*, 69 Or App 681, 686, 687 P2d 805 (1984) (officer's observation that driver was having trouble lighting what officer thought was a pipe, without other evidence that pipe contained illegal drugs, did not support reasonable suspicion to justify traffic stop). Likewise, as we have repeatedly held, the mere fact that a suspect is in the company of a known drug user does not support the inference that the

were also to be in possession of drug paraphernalia, that paraphernalia would bear or contain detectable traces of the controlled substance).

[4] Riesen testified that, upon seeing the syringes in the car door, he "had grounds to further [his] investigation" and defendant "was not free to go at that point." However, he did not explain what, if any, inferences he reached based upon that observation. The trial court was similarly brief in this part of its analysis, and succinctly stated that, upon observing the syringes, Riesen "had reasonable suspicion to continue or to conduct a criminal investigation into what might be in those syringes[.]" Because the possession of syringes is not itself a crime, we are left to assume that Riesen and the court made certain intervening inferences in determining that Riesen had reasonable suspicion to detain defendant to investigate her for a crime.

suspect is also a drug user. *E.g., State v. Bertsch*, 251 Or App 128, 134, 284 P3d 502 (2012); *State v. Zumbrum*, 221 Or App 362, 370, 189 P3d 1235 (2008). As a result, the past conduct of defendant's company also adds little to support Riesen's conclusion that defendant herself was a drug user. All told, Riesen's second inference had relatively little support.

But whether or not the first two inferences were warranted, it is at the final link that the inferential chain truly breaks down. That is, even if Riesen could reasonably infer that defendant was a drug user, evidence of a person's past or even routine drug use, without additional evidence, does not give rise to the reasonable inference that the person currently possesses drugs. *E.g., State v. Holcomb*, 202 Or App 73, 77-78, 121 P3d 13, *adh'd to as modified on recons*, 203 Or App 35, 125 P3d 22 (2005) ("track marks on defendant's arm—indicating that she probably, almost certainly, used unlawful controlled substances" and evidence that defendant may have recently used drugs did not support reasonable inference that defendant currently possessed drugs); *cf. Kolb*, 251 Or App at 314 (evidence that defendant was under the influence of methamphetamine did not give rise to a reasonable inference that defendant possessed methamphetamine paraphernalia that retained methamphetamine residue). In other words, even if Riesen's observations told him that defendant was an IV drug user, that conclusion fell short of the reasonable suspicion required to investigate defendant for the illegal possession of drugs.

To summarize, even when viewed in light of Riesen's training and experience, the relevant facts known to him— that defendant had been driving a car with syringes in the pocket of the driver's side door, that IV drug users are known to use that same type of syringe, and that defendant's passenger was on probation for past drug crimes—did not reasonably support the inference that defendant might possess illegal drugs when Riesen stopped her. Under the totality of the circumstances, Riesen's suspicion was not objectively reasonable, and, therefore, Riesen unlawfully seized defendant when he questioned her at the car about drugs.

Our conclusion that Riesen unlawfully seized defendant eliminates any need to consider the merits of defendant's

consent arguments. Evidence obtained pursuant to a consent search must be suppressed if an unlawful seizure preceded the search, unless the state proves that the police did not exploit the unlawful seizure to obtain the disputed evidence. *State v. Unger*, 356 Or 59, 70-74, 333 P3d 1009 (2014). The state has not met that burden here. The state did not argue before the trial court that Riesen did not exploit the unlawful seizure to obtain defendant's consent. *See Kolb*, 251 Or App at 315, 315 n 6 (where we concluded, contrary to the trial court, that defendant's consent to search a duffel bag occurred during an unlawful stop, the state had not met its burden to prove attenuation before the trial court). Further, the state, appropriately, does not make that argument for the first time on appeal. *See State v. Booth*, 272 Or App 192, 199-200, 355 P3d 181 (2015) (declining to affirm on that alternative basis when the trial court never considered it). Accordingly, the trial court erred in denying defendant's motion to suppress the physical evidence and incriminating statements that Riesen obtained.

Reversed and remanded.