ORTEGA, P. J.
*765 In this consolidated appeal, defendant challenges her convictions for unlawful possession of heroin, ORS 475.854, and unlawful possession of methamphetamine, ORS 475.894. In case number 14CR15300, defendant asserts that the trial court erred in denying her motion to suppress evidence obtained during a traffic stop that she contends was unlawfully extended because the "officer-safety" exception to the warrant requirement did not justify the officer's actions.[1] We conclude that the trial court erred in denying defendant's motion and, accordingly, reverse and remand.
We review the denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them. State v. Ehly , 317 Or. 66, 74-75, 854 P.2d 421 (1993). Accordingly, we state the facts consistently with the trial court's factual findings.
Around 8:00 p.m., while patrolling an area of Medford known to have "a lot of drug and criminal activity," Officer Oller noticed two people in a parked car in an "alleyway" with a "building on one side" and an "empty lot" on the other. Defendant was in the driver's seat, and a man was in the passenger seat. The car did not have a front license plate, a traffic violation under ORS 803.540. State v. Blueback , 291 Or. App. 779, 784, 422 P.3d 385 (2018). Oller initiated a traffic stop by pulling in front of the car so that his car faced the parked car. He got out of his car and, as he approached, saw both defendant and the passenger "hiding or concealing or obtaining *** items around their waist, around the areas [he] couldn't see within the vehicle," which Oller characterized as "furtive movements." Oller knew that weapons are commonly hidden and concealed around the waist. He ordered them to "stop moving" and keep their hands where he could see them, and they complied. He then *766 called for a cover officer because he was concerned for his safety and "wanted another set of eyes." They both appeared nervous, and Oller saw "fresh track marks" or needle marks on defendant's arms. Oller asked for their names but did not take any steps to process the citation for the traffic violation while waiting for the cover officer. During that time, Oller waited at the side of the car, and the "passenger kept moving towards his waist line." Defendant also dropped something "like a candy box" on the floor and shuffled something around with her feet. Oller testified that he did not believe that the candy box was a weapon. Rather, the candy box was as small as a credit card or as big as a "movie box" and could have had a number of things in it, including a *997 weapon. Oller again told them to stop moving.
Once Officer Dennis arrived, about two and a half minutes later, Oller briefed Dennis and told him to watch the passenger while Oller approached defendant because "there might be weapons present." Oller then approached defendant and asked her, "Hey, do you mind moving your right foot?" She moved her right foot but "moved her left foot over" to where her right foot had previously been. Oller then asked, "Hey, will you move your left foot?" When defendant moved her left foot, Oller saw a syringe filled with a substance that Oller believed to be heroin. Defendant was arrested for possession of heroin and later made incriminating statements.
At the hearing on defendant's motion to suppress the evidence obtained during the stop, Oller testified that he had about 11 years of law enforcement experience in Oregon and Arizona, including "advanced training in narcotics" and experience training other officers. He testified that he waited for Dennis to begin the traffic investigation because he "had officer safety issues" that had to be dealt with first-that is, being in a high crime area, outnumbered, alone, and witnessing the occupants make movements towards their waistlines where weapons are commonly kept. He also explained that police contacts with people in cars are some of the "more dangerous" encounters because of the number of areas in which things can be concealed. He further testified that by the time Dennis arrived, he believed there was a "strong possibility" that there were weapons in the car. On *767 cross-examination, when asked how he addressed his safety concerns, Oller responded that he did so by asking defendant to move her feet because he "believed that she was hiding something with her foot."
Defendant argued that Oller unlawfully extended the traffic stop without reasonable suspicion of criminal activity and that the extension was not justified by the officer-safety exception to the warrant requirement. The state responded that Oller's actions were justified by reasonable suspicion of a crime and officer-safety concerns and that the two issues are "intertwined together." The court denied the motion without making any express factual findings, and defendant entered a conditional plea of guilty.
On appeal, the parties generally renew the arguments they made below. Defendant argues that Oller's actions were not reasonably related to the basis for the traffic stop and were unlawful because they were not justified by the officer-safety exception to the warrant requirement as articulated in State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987). The state counters that Oller's actions were reasonably related to the traffic investigation and were therefore lawful under State v. Jimenez , 357 Or. 417, 426, 353 P.3d 1227 (2015). Alternatively, the state argues that Oller's actions were justified because he had reasonable suspicion that defendant possessed a controlled substance.
Defendant conceded below that the initial stop was lawful, so we focus on whether Oller unlawfully extended the stop. Because the parties disagree on what standard we should apply to answer that question, we begin by outlining the law governing traffic stops and officer safety concerns.
With probable cause, an officer may "lawfully stop a person for a noncriminal traffic violation to investigate the offense and issue a citation without a warrant." State v. O'Dell , 291 Or. App. 359, 362, 421 P.3d 417 (2018) (citing State v. Rodgers/Kirkeby , 347 Or. 610, 623-24, 227 P.3d 695 (2010) ). During a lawful stop, an officer's authority is limited to "the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any)." Rodgers/Kirkeby , 347 Or. at 623, 227 P.3d 695. Officer conduct that is not reasonably related to the basis for the stop "must *768 be justified on some basis other than the traffic violation." Id. (emphasis omitted).
An officer may conduct a warrantless, nonconsensual search of an individual if he or she "develops a reasonable suspicion, based upon specific and articulable facts, that [the individual] might pose an immediate threat of serious physical injury to the officer or to others then present." Bates , 304 Or. at 524, 747 P.2d 991. The officer must have a *998 subjective belief that the defendant posed a threat and that belief must be objectively reasonable. State v. Rodriguez-Perez , 262 Or. App. 206, 213, 325 P.3d 39 (2014). To be objectively reasonable, "the officer's safety concerns must be based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." Id.
Short of a nonconsensual search, an officer may resolve "cognizable safety concerns" with less intrusive actions that are reasonably related to the safe investigation of a traffic violation. Jimenez , 357 Or. at 424, 426, 353 P.3d 1227 ("[I]n appropriate circumstances, an officer's safety concerns may make the officer's actions, including questioning about weapons, reasonably related and necessary to effectuate a traffic stop."); see also State v. Miller , 363 Or. 374, 422 P.3d 240, modified and adh'd to on recons. , 363 Or. 742, 428 P.3d 899 (2018) (further articulating Jimenez standard when an officer makes a weapons inquiry); State v. Pichardo , 360 Or. 754, 759-60, 388 P.3d 320 (2017) (applying Jimenez standard to officer's request for consent to search); State v. Watson , 353 Or. 768, 782, 305 P.3d 94 (2013) ("[V]erification of a person's identity and the issuance of a citation are not the only activities that may be reasonably related to the investigation."). To demonstrate that an officer's less intrusive measures are "reasonably related to a traffic investigation and reasonably necessary to effectuate it, the state must present evidence that (1) the officer perceived a circumstance-specific danger and decided that [the action taken] was necessary to address that danger; and (2) the officer's perception and decision were objectively reasonable." Jimenez , 357 Or. at 430, 353 P.3d 1227. In order for an officer's perception of a threat to be reasonable, the officer must be able to articulate "reasonable, circumstance-specific concerns" for safety, but those "concerns need not arise from *769 facts particular to the detained individual; they can arise from the totality of the circumstances that the officer faces." Id. at 429, 353 P.3d 1227.
Defendant urges us to evaluate Oller's conduct by the standard set forth in Bates , 304 Or. at 524, 747 P.2d 991 (requiring "reasonable suspicion, based upon specific and articulable facts, that [an individual] might pose an immediate threat of serious physical injury to the officer or to others then present"). However, "the strictures of the Bates test apply only to unilateral police conduct (e.g. , conducting an unconsented frisk) in response to perceived officer safety concerns." State v. Toll , 295 Or. App. 277, 285, 432 P.3d 1131 (2018) ; see also Jimenez , 357 Or. at 434, 353 P.3d 1227 (Kistler, J., concurring) ("A question is not a search. To require the same justification for both *** fails to recognize the difference."). At no point in the stop did Oller conduct a nonconsensual search of defendant; rather, he briefly waited for a cover officer to arrive and then requested and obtained consent to search by asking defendant to move her feet. Because Oller did not conduct a warrantless, unconsented search, Jimenez provides the appropriate legal framework.
Because we assume, without deciding, that waiting for the cover officer was objectively reasonable under the totality of the circumstances, we examine only Oller's decision to ask defendant to move her feet. Because defendant does not contest that Oller subjectively perceived a risk to his safety or that he subjectively decided that asking defendant to move her feet was necessary to address that risk, the question reduces to whether Oller's testimony substantiated an objectively reasonable perception of danger and consequent justification for asking defendant to move her feet before conducting the traffic investigation.[2]
To be objectively reasonable, the officer's actions must be reasonably related to the perceived danger.
*770 Toll , 295 Or. App. at 293, 432 P.3d 1131. As in other similar cases, we focus on Oller's testimony to evaluate the *999 reasonableness of his concerns and the actions he took to address them. See id. at 289, 432 P.3d 1131 ; see also Miller , 363 Or. at 385-88, 422 P.3d 240 (evaluating officer testimony). Oller testified to circumstance-specific reasons for his safety concerns. He watched defendant and her passenger making movements around their waistlines, where he could not see and where he knew that weapons are commonly kept. Oller also testified to more generalized safety concerns: In his training and experience, traffic stops pose more dangers to officers than do other types of police encounters because of the number of areas where weapons can be concealed. See generally Jimenez , 357 Or. at 428-31, 353 P.3d 1227 (generalized safety concerns present in routine police-citizen encounters do not support weapons inquiries). We focus on the officer-safety justification for Oller's request that defendant move her feet.
Although defendant disobeyed Oller's order to stop moving, by dropping the box and shuffling it with her feet, Oller testified that he did not believe the box was a weapon. He believed only that she was trying to hide something. Here, as in the Bates context, defendant's apparent attempt to hide something does not support an inference that she presented a safety concern. State v. Jimenez , 263 Or. App. 150, 160, 326 P.3d 1222 (2014), aff'd , 357 Or. 417, 353 P.3d 1227 (2015) ("Even if defendant's departure from the scene when he saw [the officer] approaching could be seen as an indication that defendant 'had something to hide'-a dubious inference at best-that fact would not provide support for the inference that defendant presented an immediate danger or threat to [officer] safety."); see also State v. Lavender , 93 Or. App. 361, 364, 762 P.2d 1027 (1988) ("The assertion of a constitutionally protected right against warrantless searches cannot be a basis for such a search."). Therefore, we conclude that the state failed to meet its burden of showing that Oller had an objectively reasonable perception of danger.
The state next argues that, even if Oller's requests were not reasonably related to the traffic investigation, they were justified because he had reasonable suspicion that defendant possessed a controlled substance. "Reasonable suspicion sufficient to support an investigatory detention exists when an officer subjectively believes that a person has *771 committed or is about to commit a crime and that belief is objectively reasonable in light of the totality of the circumstances existing at the time of the stop." State v. Oller , 277 Or. App. 529, 534, 371 P.3d 1268 (2016).
We do not understand defendant to contend that Oller did not subjectively believe that defendant committed a crime. Thus, we determine whether that subjective belief was objectively reasonable. "To be objectively reasonable, the officer's suspicion must be based on specific and articulable facts." Id. The state argues that Oller's belief was objectively reasonable based on the following facts: he observed "fresh track marks" on defendant's arms, she was in a high crime area, and the two passengers were nervous and made "furtive movements." We conclude that those facts, individually or in combination, do not support an objectively reasonable suspicion of possession of a controlled substance. See State v. Davis , 286 Or. App. 528, 535, 400 P.3d 994 (2017) ("[N]ervousness during a traffic stop contributes little, if any, weight toward reasonable suspicion that the driver is engaged in criminal activity."); Oller , 277 Or. App. at 538, 371 P.3d 1268 ("[E]vidence of a person's past or even routine drug use, without additional evidence, does not give rise to the reasonable inference that the person currently possesses drugs."); State v. Bertsch , 251 Or. App. 128, 134, 284 P.3d 502 (2012) ("[A] person's presence in a location associated with drug activity is insufficient to support an objectively reasonable belief that the person is * * * engaged in drug activity."); State v. Berry , 232 Or. App. 612, 617-18, 222 P.3d 758 (2009), rev. dismissed , 348 Or. 71, 228 P.3d 582 (2010) (defendant's transparently false explanation for turning into a particular parking lot, nervousness, furtive movements, and prior presence at a known location for drug trafficking do not give rise to reasonable suspicion of drug possession).
For the foregoing reasons, we conclude that Oller extended the stop in violation of *1000 Article I, section 9, of the Oregon Constitution.
Judgment in Case No. 14CR15300 reversed and remanded; judgment in Case No. 14CR24518 affirmed.

In case number 14CR24518, defendant asserts that the trial court erred by denying her motion to suppress evidence, contending that the officer did not have statutory authority to stop her based on reasonable suspicion that she violated a condition of her probation. We reject that assignment of error. State v. Hiner , 240 Or. App. 175, 180, 246 P.3d 35 (2010) ("The authority to arrest a probationer for a violation of a probation condition implies the authority to stop persons reasonably suspected of violating that probation condition.").

Defendant characterizes Oller's statements "Hey, do you mind moving your right foot" and "Hey, will you move your left foot" both as orders and as requests to search. No matter how the statements are labeled, we understand defendant to be arguing that they unlawfully extended the stop because they were unrelated to the basis for the stop. Because we do not understand defendant to argue that her consent was not voluntary, we do not discuss that issue here.